# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Judge: Thomas Lynch |
| RAMSPLITTER LOG SPLITTERS, INC. | ) | |
| | ) | |
| Debtors | ) | Case No. : 19-81981 |

## NOTICE OF HEARING

You are hereby notified that a hearing will be held on November 4, 2019, at 9:00 a.m., in Courtroom #3100 of the U.S. Courthouse, 327 S. Church St., Rockford, Illinois, on the attached Motion to Modify Automatic Stay, at which time you may appear and be heard.

ROCKFORD BANK & TRUST COMPANY

October 23, 2019

Date

By   /s/ David L. Davitt
DAVID L. DAVITT, its Attorney

David L. Davitt
Schlueter Ecklund & Davitt
4023 Charles Street
Rockford, Illinois 61108
(815) 229-5333

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing was sent to all parties entitled to notice by electronic transmission through the court's electronic filing system, and to the following by regular mail on October 23, 2019:

Ramsplitter Log Splitters, Inc.
2230 Kishwaukee St.
Rockford, IL 61104

/s/ David L. Davitt

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Judge: Thomas Lynch |
| RAMSPLITTER LOG SPLITTERS, INC. | ) | |
| | ) | |
| Debtors | ) | Case No. : 19-81981 |

### MOTION TO MODIFY AUTOMATIC STAY
### AND TO COMPEL ABANDONMENT

Now Comes Rockford Bank & Trust Company ("Bank"), by and through its attorney, David L. Davitt, and for its Motion, states to the Court as follows:

1. Bank is a creditor holding a security interest in the Debtor's inventory, equipment and accounts. True copies of the Security Agreement and Promissory Note upon which the Bank's claims are based are attached hereto.

2. The Debtor is indebted to the Bank in the amount of $210,329.47, plus accruing interest, attorneys fees and costs.

3. Based upon the Debtor's Petition, the value of the collateral subject to the Bank's security interest is approximately $60,820.00.

4. The Debtors' Chapter 7 Bankruptcy case was filed on August 22, 2019, and the 341 Meeting was held on October 8, 2019.

5. There is no equity in the Debtor's inventory, equipment and accounts, and such assets are is not necessary for any pending reorganization.

6. No adequate protection exists for the Bank's interest in the inventory, equipment and accounts.

7. The inventory, equipment and accounts are burdensome to the estate or of inconsequential value and benefit to the estate.

8. The Court has authority to order that Rule 4001(a)(3) is not applicable to the order entered in granting this motion, and Bank requests this Court so order.

WHEREFORE, Bank prays that the court modify the automatic stay imposed by Section 362 of the Bankruptcy Code, to permit Bank to proceed against the Debtor's inventory, equipment and accounts, to liquidate the property, and apply to proceeds toward payment of the Bank's claims.

Bank further prays that the court order the Trustee to abandon the Debtor's inventory, equipment and accounts.

Date: October 23, 2019

/S/    David L. Davitt
DAVID L. DAVITT, Attorney for Bank

David L. Davitt
Schlueter Ecklund & Davitt
4023 Charles Street
Rockford, Illinois 61108
(815) 229-5333


ROCKFORD
BANK &
TRUST

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $50,000.00 | 04-27-2012 | 04-27-2013 | 1168137535 | 410 / 22 | | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** RAMSPLITTER LOG SPLITTERS INC.
1912 23rd Ave.
Rockford, IL 61101

**Lender:** Rockford Bank and Trust Company
127 N. Wyman Street  P.O. Box 1748
Rockford, IL 61110

---

Principal Amount: $50,000.00          Initial Rate: 6.000%          Date of Note:  April 27, 2012

**PROMISE TO PAY.** RAMSPLITTER LOG SPLITTERS INC. ("Borrower") promises to pay to Rockford Bank and Trust Company ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifty Thousand & 00/100 Dollars ($50,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2013. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 27, 2012, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate as published in The Wall Street Journal. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month on the first business day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Rockford Bank and Trust Company, 127 N. Wyman St., P.O. Box 1748 Rockford, IL 61110.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 3.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any

## PROMISSORY NOTE
### (Continued)

Loan No: 1168137535

Page 2

Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**WHEN FEDERAL LAW APPLIES.** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notices, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Winnebago County, State of Illinois.

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by Security Agreement of even date herewith and a Mortgage on 1310 Melwood Dr., Rockford, IL of even date herewith.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**PURPOSE OF LOAN.** The purpose of this loan is for working capital.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**SMALL BUSINESS JOBS ACT CERTIFICATION.** As required by Section 4107 (d) (2) of the Small Business Jobs Act of 2010, and as a condition of entering into the (Note), RAMSPLITTER LOG SPLITTERS INC. hereby certifies to Rockford Bank & Trust Company that the principals of RAMSPLITTER LOG SPLITTERS INC. and its affiliates have not been convicted of, or pleaded nolo contendere to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911).

The term "principals" is defined as follows: if a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural personal who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Rockford Bank and Trust Company 127 N. Wyman St., P.O. Box 1748 Rockford, IL 61110.

# PROMISSORY NOTE
## (Continued)

Loan No: 1168137535                                                          Page 3

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

RAMSPLITTER LOG SPLITTERS INC.

By: _____
   Douglas R. Davidson, President of RAMSPLITTER
   LOG SPLITTERS INC.

LENDER:

ROCKFORD BANK AND TRUST COMPANY

X _____
   James Hughes, Vice President

LASER PRO Lending, Ver. 5.60.00.003   Copr. Harland Financial Solutions, Inc. 1997, 2018.   All Rights Reserved.   - IL   W:\RBT\CFI\GPL\D20 PC TR-4148   PR-24



# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $50,000.00 | 04-27-2013 | 04-27-2014 | 11681375351 | 450 / 22 | RAMSPLL300 | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| **Borrower:** | RAMSPLITTER LOG SPLITTERS INC.<br>1912 23rd Ave.<br>Rockford, IL 61101 | **Lender:** | Rockford Bank and Trust Company<br>Guilford Location<br>4571 Guilford Road., P.O. Box 1748<br>Rockford, IL 61107 |
|---|---|---|---|

**Principal Amount: $50,000.00**     **Initial Rate: 6.000%**     **Date of Agreement: April 27, 2013**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory note dated April 27, 2012 in the amount of $50,000.00 with an original maturity date of April 27, 2013 and as amended from time to time.

**DESCRIPTION OF CHANGE IN TERMS.** This Note is hereby extended to mature on April 27, 2014.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2014. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 27, 2013, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate as published in The Wall Street Journal. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each month on the first business day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**SMALL BUSINESS JOBS ACT CERTIFICATION.** As required by Section 4107 (d) (2) of the Small Business Jobs Act of 2010, and as a condition of entering into the (Note), RAMSPLITTER LOG SPLITTERS INC. hereby certifies to Rockford Bank & Trust Company that the principals of RAMSPLITTER LOG SPLITTERS INC. and its affiliates have not been convicted of, or pleaded nolo contendre to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911). The term "principals" is defined as follows: if a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

**COUNTERPARTS.** This agreement may be executed in counterparts, each of which shall be deemed an original against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 1168137535                                                                Page 2

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

RAMSPLITTER LOG SPLITTERS INC.

By: _____
   Douglas R. Davidson, President of RAMSPLITTER
   LOG SPLITTERS INC.

LENDER:

ROCKFORD BANK AND TRUST COMPANY

X _____
  James Hughes, Vice President

LASER PRO Lending, Ver. 13.3.0.001  Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - IL  W:\PST\CFI\PL\D20C.FC  TR-5013  PR-9



# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $100,000.00 | 06-24-2013 | 04-27-2014 | 1168137535 | 310 / 22 | RAMSPLLS00 | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  RAMSPLITTER LOG SPLITTERS INC.
1912 23rd Ave.
Rockford, IL 61101

**Lender:**  Rockford Bank and Trust Company
Guilford Location
4571 Guilford Road., P.O. Box 1748
Rockford, IL 61107

---

**Principal Amount:  $100,000.00**          **Initial Rate:  6.000%**          **Date of Agreement:  June 24, 2013**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory note dated April 27, 2012 in the amount of $50,000.00 with an original maturity date of April 27, 2013 and as amended from time to time.

**DESCRIPTION OF CHANGE IN TERMS.** Effective June 24, 2013, the amount of the Note shall be increased from $50,000.00 to $100,000.00.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2014. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 27, 2013, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate as published in The Wall Street Journal. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each month on the first business day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**SMALL BUSINESS JOBS ACT CERTIFICATION.** As required by Section 4107 (d) (2) of the Small Business Jobs Act of 2010, and as a condition of entering into the (Note), RAMSPLITTER LOG SPLITTERS INC. hereby certifies to Rockford Bank & Trust Company that the principals of RAMSPLITTER LOG SPLITTERS INC. and its affiliates have not been convicted of, or pleaded nolo contendre to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911).
The term "principals" is defined as follows: If a sole proprietorship, the proprietor; If a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural personal who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

**COUNTERPARTS.** This agreement may be executed in counterparts, each of which shall be deemed an original against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 1168137535                                                              Page 2

---

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

**RAMSPLITTER LOG SPLITTERS INC.**

By: _____
Douglas R. Davidson, President of RAMSPLITTER LOG SPLITTERS INC..

**LENDER:**

**ROCKFORD BANK AND TRUST COMPANY**

X _____
James Hughes, Vice President

---

LASER PRO Lending, Ver. 13-1.0.004  Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - IL  W:\CFI\LPL\D20C.FC  TR-4706  PR-3


ROCKFORD
BANK &
TRUST

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $200,000.00 | 08-30-2013 | 04-27-2014 | 68137535 | 410 / 22 | RAMSPLLS00 | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** RAMSPLITTER LOG SPLITTERS INC.
1912 23rd Ave.
Rockford, IL 61101

**Lender:** Rockford Bank and Trust Company
Guilford Location
4571 Guilford Road., P.O. Box 1748
Rockford, IL 61107

**Principal Amount: $200,000.00      Initial Rate: 6.000%      Date of Agreement: August 30, 2013**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated April 27, 2012 in the amount of $50,000.00 with an original maturity dated of April 27, 2013 and as amended from time to time.

**DESCRIPTION OF CHANGE IN TERMS.** Effective August 30, 2013, the amount of the Note shall be increased from $100,000.00 to $200,000.00.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2014. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 27, 2013, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate as published in The Wall Street Journal, (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each month on the first business day of each month. Borrower understands that Lender may make loans based on other rates as well. The index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**SMALL BUSINESS JOBS ACT CERTIFICATION.** As required by Section 4107 (d) (2) of the Small Business Jobs Act of 2010, and as a condition of entering into the (Note), RAMSPLITTER LOG SPLITTERS INC. hereby certifies to Rockford Bank & Trust Company that the principals of RAMSPLITTER LOG SPLITTERS INC. and its affiliates have not been convicted of, or pleaded nolo contendere to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911). The term "principals" is defined as follows: If a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

**COUNTERPARTS.** This agreement may be executed in counterparts, each of which shall be deemed an original against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

# CHANGE IN TERMS AGREEMENT
## (Continued)

---

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

RAMSPLITTER LOG SPLITTERS INC.

By: _____

Douglas H. Davidson, President of RAMSPLITTER
LOG SPLITTERS INC.

**LENDER:**

ROCKFORD BANK AND TRUST COMPANY

X _____

James Hughes, Vice President

LASER PRO Lending, Ver. 13.1.0.004 Copr. Harland Financial Solutions, Inc. 1997, 2013. All Rights Reserved. - IL W:\CFI\LPL\D20C.FC TR-5357 PR-36


ROCKFORD
BANK &
TRUST

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $200,000.00 | 04-27-2014 | 04-27-2015 | 1168137535 | 410 / 22 | RAMSPLLS00 | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:** RAMSPLITTER LOG SPLITTERS INC.
1912 23rd Ave.
Rockford, IL 61101

**Lender:** Rockford Bank and Trust Company
Guilford Location
4571 Guilford Road, P.O. Box 1748
Rockford, IL 61107

---

**Principal Amount:  $200,000.00**      **Initial Rate:  6.000%**      **Date of Agreement:  April 27, 2014**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory note dated April 27, 2012 in the amount of $50,000.00 with an original maturity date of April 27, 2013 and as amended from time to time.

**DESCRIPTION OF CHANGE IN TERMS.** This Note is hereby extended to mature on April 27, 2015.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2015. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 27, 2014, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate as published in The Wall Street Journal. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month on the first business day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**SMALL BUSINESS JOBS ACT CERTIFICATION.** As required by Section 4107 (d) (2) of the Small Business Jobs Act of 2010, and as a condition of entering into the (Note), RAMSPLITTER LOG SPLITTERS INC. hereby certifies to Rockford Bank & Trust Company that the principals of RAMSPLITTER LOG SPLITTERS INC. and its affiliates have not been convicted of, or pleaded nolo contendre to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911).
The term "principals" is defined as follows: if a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

**COUNTERPARTS.** This agreement may be executed in counterparts, each of which shall be deemed an original against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 1168137535                                                      Page 2

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

RAMSPLITTER LOG SPLITTERS INC.

By:_____
Douglas R. Davidson, President of RAMSPLITTER
LOG SPLITTERS INC.

LENDER:

ROCKFORD BANK AND TRUST COMPANY

x_____
James Hughes, Vice President

LASER PRO Lending, Ver. 14.2.0.031 Copr. D+H USA Corporation 1996, 2014. All Rights Reserved. - IL T:\Apps\Laserpro\ABT\CFPL\PL\D30C.FC TR-5364 PR-8

 ROCKFORD BANK & TRUST

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $200,000.00 | 04-27-2015 | 04-27-2016 | 1168137535 | 410 / 22 | RAMSPLLS00 | 8840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  RAMSPLITTER LOG SPLITTERS INC.
2230 Kishwaukee Street
Rockford, IL 61104

**Lender:**  Rockford Bank and Trust Company
Guilford Location
4571 Guilford Road., P.O. Box 1748
Rockford, IL 61107

---

**Principal Amount: $200,000.00**   **Initial Rate: 6.000%**   **Date of Agreement: April 27, 2015**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory note dated April 27, 2012 in the amount of $50,000.00 with an original maturity date of April 27, 2013 and as amended from time to time.

**DESCRIPTION OF CHANGE IN TERMS.** This Note is hereby extended to mature on April 27, 2016.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2016. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 27, 2015, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate as published in The Wall Street Journal, (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month on the first business day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**COUNTERPARTS.** This agreement may be executed in counterparts, each of which shall be deemed an original against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

RAMSPLITTER LOG SPLITTERS INC.

By: _____
Douglas R. Davidson, President of RAMSPLITTER
LOG SPLITTERS INC.

**LENDER:**

ROCKFORD BANK AND TRUST COMPANY

X _____
James Hughes, Vice President



# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $200,000.00 | 04-27-2016 | 04-27-2017 | 1168137535 | | RAMSPLLS00 | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:** RAMSPLITTER LOG SPLITTERS INC.
2230 Kishwaukee Street
Rockford, IL 61104

**Lender:** Rockford Bank and Trust Company
Guilford Location
4671 Guilford Road., P.O. Box 1748
Rockford, IL 61107

---

**Principal Amount: $200,000.00**      **Initial Rate: 6.250%**      **Date of Agreement: April 27, 2016**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated April 27, 2012 in the amount of $50,000.00 with an original maturity date of April 27, 2013 and all amendments thereafter.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date, extend payment schedule and re-state the interest rate.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2017. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 27, 2016, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate as published in The Wall Street Journal. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each month on the first business day of each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.500% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.250%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**COUNTERPARTS.** This agreement may be executed in counterparts, each of which shall be deemed an original against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

RAMSPLITTER LOG SPLITTERS INC.

By: _____
Douglas R. Davidson, President of RAMSPLITTER
LOG SPLITTERS INC.

# CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 1168137535
Page 2

---

**LENDER:**

**ROCKFORD BANK AND TRUST COMPANY**

X _James R. Hughes_
James Hughes, Vice President

LaserPro, Ver. 18.1.10.003 Copr. D+H USA Corporation 1997, 2018. All Rights Reserved. - IL E:\AppsLaserpro\ABT\CFALPL\D20C.FC TR-7618 PR-9



ROCKFORD BANK & TRUST

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $200,000.00 | 04-27-2017 | 04-27-2018 | 1168137535 | 410 / 22 | RAMSPLLS00 | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** RAMSPLITTER LOG SPLITTERS INC.
2230 KISHWAUKEE ST.
ROCKFORD, IL 61104-7004

**Lender:** Rockford Bank and Trust Company
4571 Guilford Road, PO Box 1748
Rockford, IL 61110-0248

**Principal Amount: $200,000.00** **Initial Rate: 6.750%** **Date of Agreement: April 27, 2017**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated April 27, 2012 in the amount of $50,000.00 with an original maturity date of April 27, 2013 and all amendments thereafter.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date, extend payment schedule and re-state the interest rate.

**PAYMENT.** **Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2018. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 27, 2017, with all subsequent interest payments to be due on the same day of each month after that.**

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime as published in The Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month, on the first calendar day of each change period. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.000% per annum.** Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 6.750%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** **Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.**

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**LOAN PURPOSE.** The purpose of this loan is for working capital.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**COUNTERPARTS.** This agreement may be executed in counterparts, each of which shall be deemed an original against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

**RAMSPLITTER LOG SPLITTERS INC.**

By: ______________________
**DOUGLAS R. DAVIDSON, President of RAMSPLITTER LOG SPLITTERS INC.**

# CHANGE IN TERMS AGREEMENT
## (Continued)

**Loan No: 1168137535**                                                              **Page 2**

---

**LENDER:**

**ROCKFORD BANK AND TRUST COMPANY**

X _____

James Hughes, Vice President

---

LaserPro, Ver. 18.4.0.017 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - IL E:\Apps\LaserPro\GCR\4CR\LPL\D20C.FC TR-1026 PR-183



ROCKFORD
BANK &
TRUST

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $200,000.00 | 04-27-2018 | 04-27-2019 | 1168137535 | 410 / 22 | RAMSPLLS00 | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

**Borrower:**   RAMSPLITTER LOG SPLITTERS INC.
                2230 KISHWAUKEE ST.
                ROCKFORD, IL 61104-7004

**Lender:**   Rockford Bank and Trust Company
              4571 Guilford Road, PO Box 1748
              Rockford, IL 61110-0248

**Principal Amount: $200,000.00**          **Initial Rate: 7.500%**          **Date of Agreement: April 27, 2018**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated April 27, 2012 in the amount of $50,000.00 with an original maturity date of April 27, 2013 and all amendments thereafter.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date, extend payment schedule and re-state the interest rate.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 27, 2019. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 27, 2018, with all subsequent interest payments to be due on the same day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime as published in The Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month, on the first calendar day of each change period. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.750% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.750 percentage points over the Index, resulting in an initial rate of 7.500%. NOTICE: Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**LOAN PURPOSE.** The purpose of this loan is for working capital.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**COUNTERPARTS.** This agreement may be executed in counterparts, each of which shall be deemed an original against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

RAMSPLITTER LOG SPLITTERS INC.

By: _____
DOUGLAS   R.   DAVIDSON,   President   of
RAMSPLITTER LOG SPLITTERS INC.

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No: 1168137535                                                                                      Page 2

---

**LENDER:**

**ROCKFORD BANK AND TRUST COMPANY**

X _James R. Hughes_ VP

Janes Hughes, Vice President

---

LaserPro, Ver. 17.4.21.005 Copr. D+H USA Corporation 1997, 2019. All Rights Reserved. - IL E:\Apps\LaserPro\CFI\LPL\D30C.FC TR 4295 PR-193


**ROCKFORD BANK & TRUST**

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $350,000.00 | 04-27-2012 | 04-27-2013 | 4168437836 | 410 / 22 | | 840 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Grantor: | RAMSPLITTER LOG SPLITTERS INC. | Lender: | Rockford Bank and Trust Company |
|---|---|---|---|
| | 1912 23rd Ave. | | 127 N. Wyman Street  P.O. Box 1748 |
| | Rockford, IL  61101 | | Rockford, IL  61110 |

**THIS COMMERCIAL SECURITY AGREEMENT** dated April 27, 2012, is made and executed between RAMSPLITTER LOG SPLITTERS INC. ("Grantor") and Rockford Bank and Trust Company ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

    (A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

    (B)  All products and produce of any of the property described in this Collateral section.

    (C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

    (D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

    (E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Grantor regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

    **Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

    **Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

    **No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is

# COMMERCIAL SECURITY AGREEMENT
**Loan No: 1168137535**      **(Continued)**      **Page 2**

a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Illinois, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that

## COMMERCIAL SECURITY AGREEMENT

**Loan No: 1168137535**
**(Continued)**
**Page 3**

coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Agreement and this Agreement shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Agreement or of any note or other instrument or agreement evidencing the Indebtedness and the Collateral will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Agreement.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or

# COMMERCIAL SECURITY AGREEMENT

## (Continued)

sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Illinois Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of any sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election

## COMMERCIAL SECURITY AGREEMENT
**(Continued)**

Loan No: 1168137535       Page 5

by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Winnebago County, State of Illinois.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means RAMSPLITTER LOG SPLITTERS INC. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No: 1168137535

Page 6

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means RAMSPLITTER LOG SPLITTERS INC..

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement together with all interest thereon.

**Lender.** The word "Lender" means Rockford Bank and Trust Company, its successors and assigns.

**Note.** The word "Note" means the Note executed by RAMSPLITTER LOG SPLITTERS INC. in the principal amount of $50,000.00 dated April 27, 2012, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED APRIL 27, 2012.

GRANTOR:

RAMSPLITTER LOG SPLITTERS INC.

By: _____
Douglas R. Davidson, President of RAMSPLITTER
LOG SPLITTERS INC.

LENDER:

ROCKFORD BANK AND TRUST COMPANY

X _____
James Hughes, Vice President

LASER PRO Lending, Ver. 5.59.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2012. All Rights Reserved. - IL W:\APPS\CFI\LPL\E40.FC TR-4166 PR-24